THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
PAUL CAPPIELLO, PLAINTIFF IN ERROR.

Argued May 20, 1930—Decided October 20, 1930.

For the plaintiff in error, *Joseph Kraemer.*

For the state, *Joseph L. Smith,* prosecutor of the pleas, and *Joseph E. Conlon,* assistant prosecutor.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error was indicted by the grand jury of Essex county for the crime of murder in the killing of one Michael Iaccarino. He admitted the killing, but claimed that it was done in self defense. The trial resulted in his conviction of murder in the first degree.

The undisputed proofs in the case showed that one Mary Impagliazio, who was a sister of the plaintiff in error, deserted her husband, with whom she had been living in Brooklyn, and went to Newark with Iaccarino, and lived with him as his wife at No. 11½ Grant street, in that city, for some time. Plaintiff in error, having discovered these facts, went to Newark, according to his testimony, to attempt to persuade his sister to leave her paramour and come back to Brooklyn to live with her husband. When he reached 11½ Grand street his sister was not in the house. He saw the landlady, however, and while he was having a talk with her he observed Iaccarino on the street, and went to meet him. After their meeting the two walked into a garage, in front of which they had come together, and went through the garage to the rear. While there the plaintiff in error shot and killed Iaccarino. He attempted to justify his act while on the witness-stand by testifying that before the shooting the deceased assaulted him, kicking him in the legs and striking him with his fists, and that the deceased then put his hand into his pocket, as if he were about to draw a gun; and that thereupon he, the plaintiff in error, pulled out his own gun and shot Iaccarino in self defense.

The conviction comes up for review under the one hundred and thirty-sixth section of the Criminal Procedure act. *Comp. Stat., p.* 1863. It is not contended, however, that the verdict of the jury is contrary to the weight of the evidence, the plaintiff in error basing his attack upon the validity of the conviction solely upon the alleged admission of incompetent testimony submitted on the part of the state, and upon alleged error in the charge to the jury.

Dealing with the first of these contentions, the argument

is that the trial court erroneously permitted the defendant's sister, Mary, who had eloped with the deceased, to testify to acts of, and conversations with him, not in the presence of the plaintiff in error, the manifest purpose of such testimony being to establish a motive for the killing on the part of the defendant. With two exceptions, none of the testimony was challenged by the plaintiff in error, and no action with relation to its admission or rejection was taken by the trial court. The case, as has already been stated, comes up under the one hundred and thirty-sixth section of our Criminal Procedure statute. Counsel for the plaintiff in error asserts that, notwithstanding the situation just adverted to, the statute requires this court to reverse the conviction if the testimony is legally objectionable. The language of the provision upon which counsel relies is that "if it appear that the plaintiff in error on the trial below suffered manifest wrong or injury, either in the admission or rejection of testimony, whether objection was made thereto or not * * * the appellate court shall remedy such wrong or injury and give judgment accordingly, and order a new trial." The Supreme Court in the case of *State* v. *Mohr,* 2 *N. J. Mis. R.* 261, points out that the statutory provision relied upon by counsel applies only where judicial action has been taken upon the question presented, and testimony has been excluded or admitted over objection taken; that the words "whether objection was made thereto or not" refer to the action of the trial judge in admitting or rejecting the testimony, and that where the court takes no action upon the question there is neither a judicial rejection or reception of the evidence. A number of cases are cited in the opinion in support of this rule, and we do not doubt its soundness.

The two questions which were specifically objected to called for information from the witness as to where she went when she was in Brooklyn on a certain occasion, and for what purpose, and, further, what she did after that purpose had been accomplished. Her testimony was that while she was in Brooklyn she went around a little for the purpose of

seeing if she could find "Mike;" that is, her paramour, the man who was killed, and whom she supposed to be in Brooklyn at that time. The other question she answered by saying that after failing to find "Mike," she got into a taxicab, and told the driver to take her back to Newark. We see nothing objectionable in this testimony. Its purpose manifestly was to indicate the character of the relationship existing between the witness and the deceased, and thus to establish a link in the chain of testimony showing a motive for the killing of Iaccarino by the plaintiff in error. But, assuming that it was incompetent, as counsel for the plaintiff in error contends, and that it should, therefore, have been excluded, certainly its admission was harmless so far as the defendant was concerned, for her illicit relations with "Mike" and the fact that they were living together in Newark were conceded, and, this being so, the admission of this testimony, assuming it to have been erroneous, affords no ground for reversal, this being the express provision of section 136 of the Criminal Procedure act, above referred to.

The next contention is that the trial court erred in overruling a question put to the state's witness, Leonard Epp, on his cross-examination. He had testified on his direct examination as to matters connected with the killing, of which he was an eye witness; that is, he heard the shots fired, he saw the deceased fall to the ground, and immediately thereafter saw the corner of a man's coat as he turned and went out of the yard in the rear of the garage. Upon cross-examination, after having had his attention directed to his testimony on direct examination, he was asked this question: "Didn't you sign a written statement for Mr. Schaeffer, of the prosecutor's office?" The purpose of the question, as is conceded by counsel for the plaintiff in error, was to discredit the testimony with relation to the killing given on his direct examination. In our opinion, the exclusion of this question was proper. The rule is entirely settled in this state that, where the purpose of a question such as that now under consideration is to show that the witness made a written statement before the trial contradictory of the testimony given

by him at the trial, and thus discredit him before the jury, it can only be made admissible by first laying a foundation therefor, and this must be done by calling the attention of the witness to the contents of the paper, and then asking him whether he had not made the statements contained therein. *State* v. *Lodico*, 88 *N. J. L.* 394; *State* v. *Pitman*, 98 *Id.* 626.

The last ground upon which counsel bases the right of his client to have the conviction reversed is directed at an excerpt from the charge of the court to the jury on the question of self defense, which was as follows: "Now, where the justification of self defense springs from the claim that the deceased made an assault upon the defendant, the first consideration is, did the deceased make an assault upon the defendant? and, if you are satisfied that he did, then the next consideration is whether the defendant himself prepared for and provoked the affray. If you find beyond a reasonable doubt that the defendant prepared for and intentionally provoked the affray, he cannot successfully set up the plea of self defense." The argument of counsel in support of his contention that this instruction was erroneous is that by reason of it the jury could not approach the consideration of the defendant's plea of self defense unless and until they first found that there was an actual assault committed upon him, and that, as a corollary to that, if they found there was no assault committed upon the defendant, there could be no further consideration of the defense of self defense. It seems to us that this argument is not even ingenious. The trial court in this portion of the charge was dealing with the conditions under which the killing occurred, and it was based upon the sworn testimony of the defendant that before the shooting the deceased had made an assault upon him. The court told the jury that if they found this testimony to be true, then they should consider whether the defendant prepared for and provoked the affray, and that if he did, and it so appeared beyond a reasonable doubt, he could not successfully set up the plea of self defense. The soundness of this instruction seems to us to be manifest. A person who, having a grudge against another, arms himself with

a revolver, and then hunts up that other person for the purpose of provoking the latter to commit an assault upon him, and having effected that purpose, draws his gun and shoots down the person whom he has induced to make the assault, can hardly be said to have been legally justified in doing so upon the ground that his act in shooting his opponent was one of self defense.

For the reasons above indicated, we conclude that there should be an affirmance.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.